AO 442 (Rev. 11/11) Arrest Warrant                                              11756390

# UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF TEXAS

FILED BY ___BM___ D.C.
Sep 29, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

| United States of America | ) | 47/O L/5: 93/NGVV |
| v. | ) | |
| DANNY TORRES (02) | ) | Case No. 6:25-cr-1-2 |
| | ) | |
| | ) | 3:16 pm Jan 16, 2025 |
| | ) | RECEIVED |
| *Defendant* | ) | EASTERN DISTRICT OF TEXAS |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   DANNY TORRES (02),
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

   Felony - Count 1 = 18 U.S.C. § 371 (Conspiracy to Operate an Unlicensed Money Transmitting Business)

Date:   01/16/2025

*Issuing officer's signature*
David A. O'Toole
*Printed name and title*

City and state:   Tyler, Texas

---

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____
at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION



FILED
JAN 15 2025
Clerk, U.S. District Court
Texas Eastern

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | No. 625 CR 1 |
| v. | § | JUDGE |
| | § | |
| MATTHEW MONTANO (01) | § | FILED UNDER SEAL |
| DANNY TORRES (02) | § | |
| ANDY VAN DANG (03) | § | 25-MJ-3871-LETT |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

Defendants

1. **Matthew Montano** resided in or around Houston, Texas.

2. **Danny Torres** resided in or around Miami, Florida.

3. **Andy Van Dang** resided in or around Houston, Texas.

Financial Institutions

4. Bank of America, N.A. (Bank of America) was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Charlotte, North Carolina, within the Western District of North Carolina.

5. JPMorgan Chase, N.A. (Chase) was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in New York, New York, within the Southern District of New York.

Indictment – Page 1

6. Wells Fargo Bank, N.A. (Wells Fargo) was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Sioux Falls, South Dakota, within the District of South Dakota.

7. BankUnited, Inc. (BankUnited) was a "financial institution," as defined by Title 18, United States Code, Section 20. It was based in Miami, Florida, within the Southern District of Florida.

Terminology

8. Cryptocurrency, a type of virtual or digital currency, is a decentralized, peer-to peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services or exchanged for fiat currency or other cryptocurrencies.

9. Bitcoin (or "BTC") is a type of virtual currency. Unlike traditional, government-controlled currencies (i.e., fiat currencies), such as the U.S. dollar, Bitcoin is not managed or distributed by a centralized bank or entity. Because of that, Bitcoin can be traded without the need for intermediaries. Bitcoin transactions are approved/verified by computers running Bitcoin's software. Those computers are called network nodes. Each node uses cryptography to record every Bitcoin transaction on the Bitcoin blockchain. The Bitcoin blockchain is a public, distributed ledger. Bitcoin can be exchanged for fiat currency, other virtual currencies, products, and services.

10. A cryptocurrency exchange is a business that allows customers to trade cryptocurrencies or digital currencies for other assets, such as conventional fiat currency or other digital currencies.

11. A money services business (MSB) includes a person or entity doing business, whether or not on a regular basis or as an organized business concern, in the capacity of a currency dealer or exchanger or money transmitter, among other things.

12. A market maker is an individual who actively quotes two-sided markets in a particular security, providing bids and offers along with the market size of each. Market makers provide liquidity and depth to markets and profit from the difference in the bid-ask spread.

13. Online peer-to-peer bitcoin exchange platforms facilitates over-the-counter trading of local currency for BTC. Users post advertisements on the website, where they state exchange rates and payment methods for buying or selling BTC.

# COUNT 1

<u>Violation</u>:  18 U.S.C. § 371
(Conspiracy to Operate an
Unlicensed Money Transmitting
Business)

1. The General Allegations sections of this indictment are realleged and incorporated by reference as though fully set forth herein.

2. From in or about April 2019, and continuing through in or about March 2021, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas, and elsewhere, the defendants, **Matthew Montano**, **Danny Torres**, and **Andy Van Dang**, did knowingly combine, conspire, and agree each other and with other persons, both known and unknown to the Grand Jury, to commit and abet certain offenses against the United States in violation of 18 U.S.C. § 1960, that is:

> to knowingly conduct, control, manage, supervise, direct, or own all or part of an unlicensed money transmitting business which affected interstate or foreign commerce in some manner or degree without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable, or while failing to comply with the money transmitting business registration requirements under 31 U.S.C. § 5330 or regulations prescribed under that section, or otherwise involving the transportation or transmission

**Indictment – Page 4**

of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity.

## Purpose of the Conspiracy

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to operate an unlicensed money transmitting business in order to unlawfully and unjustly enrich themselves by transmitting funds on behalf of others.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. To achieve the goals of their conspiracy, the defendants and their co-conspirators opened and controlled multiple U.S. bank accounts, under false and fictitious pretenses, in order to operate an unlicensed money transmitting business, namely a cryptocurrency exchange.

5. The defendants and their co-conspirators' unlicensed cryptocurrency exchange business provided themselves and others with the ability to launder criminal proceeds obtained through various means.

6. Customers would make deposits, usually in cash, money order, cashier's check, or induce others to make deposits into U.S. bank accounts belonging to the

defendants and their co-conspirators. In exchange for the deposits, the defendants and their co-conspirators would provide BTC to their customers.

7. The defendants and their co-conspirators perpetuated the conspiracy by opening and using multiple business bank accounts that they and their co-conspirators opened across the U.S. They required this "business model" due to banks closing their accounts because of suspected illegitimate business activities.

8. The defendants and their co-conspirators utilized approximately fifteen U.S. bank accounts established in various business names.

9. The table below shows some of the business and individual names associated with particular defendants:

| Defendant | Business/Individual Name |
|---|---|
| **Matthew Montano** | A.M. Construction Group, LLC<br>Greywater Data Solutions, LLC<br>Pescatlan LLC |
| **Danny Torres** | 72M, LLC |
| **Andy Van Dang** | Andy Van Dang |
| Unindicted Co-conspirator 1 | Araguaney 2019 C.A., LLC |

10. One of the companies, Pescatlan, LLC, was a corporation registered with the State of Texas, Office of Secretary of State. **Matthew Montano** was listed as the Registered Agent and Chief Executive/Manager/Director.

11. Pescatlan, LLC was used to open a business checking account at Bank of America. The account was then used to send and receive deposits in exchange for BTC.

12. Araguaney 2019 C.A., LLC is a corporation registered in the State of Florida, Division of Corporations. **Unindicted Co-conspirator 1** was listed as the registered agent and an authorized member of the LLC.

13. Araguaney 2019 C.A., LLC was used to open a business checking account at Wells Fargo. The account was then used to receive deposits in exchange for BTC. **Unindicted Co-conspirator 1** was listed as the Registered Agent and Authorized Member.

14. 72M, LLC is a corporation registered with the State of Delaware, Division of Corporations. **Danny Torres** was listed as the President of the corporation.

15. 72M, LLC was used to open business checking and business savings accounts at Chase and BankUnited. The accounts were then used to receive deposits in exchange for BTC.

16. Greywater Data Solutions, LLC was a corporation registered with the State of Texas, Office of Secretary of State. **Matthew Montano** was listed as Registered Agent and Manager.

17. Greywater Data Solutions, LLC was used to open a business checking account at Wells Fargo. The account was then used to send and receive deposits in exchange for BTC.

18. A.M. Construction Group, LLC is a corporation registered with the State of Texas, Office of Secretary of State. **Matthew Montano** was listed as the Registered Agent and Director.

19. A.M. Construction Group, LLC was used to open a business checking account at Bank of America. The account was then used to send and receive deposits in exchange for BTC.

20. During the course of the conspiracy, the defendants and their co-conspirators engaged in approximately 275 financial transactions exchanging 234.87865 BTC for $2,526,791.85. Of the 275 financial transactions, 61 involved the direct exchange of 61.701 BTC for $825,549.96 in deposits into established shell companies.

### Overt Acts

In furtherance of the conspiracy and to achieve its objects and purpose, the following overt acts, among others, were committed in the Eastern District of Texas and elsewhere:

21. On or about April 26, 2019, Bank of America account ending in #xxxx8071 was opened by **Matthew Montano** in the name of Pescatlan, LLC.

22. On or about December 20, 2019, Chase Bank account ending in #xxxx3608 was opened by **Danny Torres** in the name of 72M, LLC.

23. On or about January 28, 2020, Wells Fargo Bank account ending in #xxxx2314 was opened by **Unindicted Co-conspirator 1** in the name of Araguaney 2019 C.A., LLC. The business purportedly involved "imports and exports of food." **Unindicted Co-conspirator 1** provided a Venezuelan Passport and an Eastern District of Texas address as forms of identification.

24. From May 8, 2020, to March 12, 2021, **Matthew Montano** negotiated trades with an individual who resided in Tyler, Smith County, Texas, within the Tyler

Division of the Eastern District of Texas, in which BTC was exchanged for deposits of cash, money orders, cashier's checks, or wire transfers, into the defendants' U.S. bank accounts.

25. On or about May 26, 2020, Wells Fargo account ending in #xxxx7863 was opened by **Matthew Montano** in the name of Greywater Data Solutions, LLC.

26. Beginning on or about July 23, 2020:

    a. **Matthew Montano**, acting on behalf of his co-defendants, negotiated a trade of BTC for a wire deposit in the amount of $52,520.00.

    b. A wire deposit in the amount of $52,520.00 was made into Chase Bank account ending in #xxxx3608 in the name of 72M, LLC, as designated by **Matthew Montano**.

    c. After the wire deposit was completed, **Matthew Montano**, acting on behalf of his co-defendants, deposited the BTC into a specific cryptocurrency account controlled by an individual in Tyler, Texas.

27. Beginning on or about July 27, 2020:

    a. **Matthew Montano**, acting on behalf of his co-defendants, negotiated a trade of BTC for deposits totaling $44,800.00.

    b. Five separate deposits were made into accounts designated by **Matthew Montano**. The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
|---|---|---|
| Chase | 72M, LLC | $9,800.00 |
| Chase | 72M, LLC | $10,000.00 |
| Wells Fargo | Araguaney 2019 C.A., LLC | $9,960.00 |
| Wells Fargo | Araguaney 2019 C.A., LLC | $4,304.10 |
| Wells Fargo | Araguaney 2019 C.A., LLC | $10,735.90 |

    c.    After the deposits were completed, **Matthew Montano**, acting on behalf of his co-defendants, deposited the BTC into a specific cryptocurrency account controlled by an individual in Tyler, Texas.

28.    Beginning on or about July 30, 2020:

    a.    **Matthew Montano**, acting on behalf of his co-defendants, negotiated a trade of BTC for deposits totaling $98,283.08.

    b.    Six separate deposits were made into accounts designated by **Matthew Montano**. The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
|---|---|---|
| Chase | 72M, LLC | $58,719.00 |
| Chase | 72M, LLC | $27,131.08 |
| Chase | Andy Dang | $4,900.00 |
| Zelle | Andy Dang | $1,750.00 |
| Zelle | Andy Dang | $3,855.00 |
| Zelle | Andy Dang | $1,928.00 |

    c.    After the deposits were completed, **Matthew Montano**, acting on behalf of his co-defendants, deposited the BTC into a specific cryptocurrency account controlled by an individual in Tyler, Texas.

Indictment – Page 10

29. Beginning on or about August 4, 2020:

   a. **Matthew Montano**, acting on behalf of his co-defendants, negotiated a trade of BTC for deposits totaling $52,273.90.

   b. Four separate deposits were made into accounts designated by **Matthew Montano**. The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
|---|---|---|
| Bank of America | Pescatlan, LLC | $8,000.00 |
| Chase | 72M | $20,025.00 |
| Chase | 72M | $17,283.90 |
| Wells Fargo | Greywater Data Solutions | $6,965.00 |

   c. After the deposits were completed, **Matthew Montano**, acting on behalf of his co-defendants, deposited the BTC into a specific cryptocurrency account controlled by an individual in Tyler, Texas.

30. On or about August 12, 2020, Bank of America account ending in #xxxx0810 was opened by **Matthew Montano** in the name of A.M. Construction Group, LLC.

31. Beginning on or about September 22, 2020:

   a. **Matthew Montano**, acting on behalf of his co-defendants, negotiated a trade of BTC for deposits totaling $25,449.35.

Indictment – Page 11

b. Three separate deposits were made into accounts designated by **Matthew Montano**. The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
|---|---|---|
| Chase | 72M, LLC | $10,447.00 |
| Bank of America | Pescatlan, LLC | $8,001.25 |
| Wells Fargo | Greywater Data Solutions, LLC | $7,001.10 |

c. After the deposits were completed, **Matthew Montano**, acting on behalf of his co-defendants, deposited the BTC into a specific cryptocurrency account controlled by an individual in Tyler, Texas.

32. Beginning on or about September 24, 2020:

a. **Matthew Montano**, acting on behalf of his co-defendants, negotiated a trade of BTC for deposits totaling $26,640.00.

b. Three separate deposits were made into accounts designated by **Matthew Montano**. The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
|---|---|---|
| Bank of America | A.M. Construction Group, LLC | $6,250.00 |
| Chase | 72M, LLC | $10,504.70 |
| Chase | 72M, LLC | $9,885.30 |

c. After the deposits were completed, Matthew Montano, acting on behalf of his co-defendants, deposited the BTC into a specific

        cryptocurrency account controlled by an individual in Tyler, Texas.

33. Beginning on or about January 14, 2021:

    a. **Matthew Montano**, acting on behalf of his co-defendants, negotiated a trade of BTC for deposits totaling $30,200.00.

    b. Three separate cash deposits were made into accounts designated by **Matthew Montano**. The table below provides a summary of the transactions:

| Bank | Account Name | Amount |
|---|---|---|
| Wells Fargo | Greywater Data Solutions, LLC | $1,200.00 |
| Bank of America | A.M. Construction Group, LLC | $28,000.00 |
| Wells Fargo | Greywater Data Solutions, LLC | $1,200.00 |

    c. After the deposits were completed, **Matthew Montano**, acting on behalf of the co-defendants, deposited the BTC into a specific cryptocurrency account controlled by an individual in Smith County, Texas, within the Eastern District of Texas.

34. Beginning on or about March 12, 2021:

    a. **Matthew Montano**, acting on behalf of his co-defendants, negotiated trades of BTC for a wire deposit in the amount of $42,219.00.

    b. A wire deposit in the amount of $42,219.00 was made into BankUnited account ending in #xxxx4861 in the name of 72M, LLC, as designated by **Matthew Montano**.

Indictment – Page 13

    c. After the wire deposit was completed, **Matthew Montano**, acting on behalf of the co-defendants, deposited the BTC into a specific cryptocurrency account controlled by an individual in Tyler, Texas.

All in violation of 18 U.S.C. § 371.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. § 982(a)(1)

1. The allegations contained in Count 1 are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2. Upon conviction of any violation of 18 U.S.C. § 1960, the defendants, **Matthew Montano**, **Danny Torres**, and **Andy Van Dang** shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).

3. The property which is subject to forfeiture, includes but is not limited to the following:

> Cash Proceeds
>
> A sum of money equal to $2,526,791.85 in United States currency, and all interest and proceeds traceable thereto, representing the amount of property involved in the offense alleged in the indictment, for which the defendants are personally liable.

4. Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendants:

> a. Cannot be located upon the exercise of due diligence;
>
> b. Has been transferred, or sold to, or deposited with a third party;
>
> c. Has been placed beyond the jurisdiction of the Court;
>
> d. Has been substantially diminished in value; or

      e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of the defendants, **Matthew Montano**, **Danny Torres**, and **Andy Van Dang**.

5. By virtue of the commission of the offense alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 982(a)(1).

All pursuant to 18 U.S.C. § 982(a)(1) and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

                                A TRUE BILL

                                GRAND JURY FOREPERSON

                                1/15/2025
                                Date

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

DUSTIN FARAHNAK
ASSISTANT UNITED STATES ATTORNEY

Indictment – Page 16

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. |
| v. | § | JUDGE |
| | § | |
| MATTHEW MONTANO (01) | § | |
| DANNY TORRES (02) | § | |
| ANDY VAN DANG (03) | § | |

## NOTICE OF PENALTY

## COUNT 1

VIOLATION: 18 U.S.C. § 371
Conspiracy to Operate an Unlicensed Money Transmitting Business

PENALTY: Imprisonment of not more than five (5) years; the greater of a fine not to exceed $250,000, a fine not to exceed two times the gross gain to the Defendant, or a fine not to exceed two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT: $100.00